UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff/Respondent, | ) | Criminal Action No. 2: 08-63-DCR |
| | ) | Civil Action No. 2: 10-7140-DCR |
| V. | ) | |
| | ) | |
| CRYSTAL COLLINS, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant/Petitioner. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Defendant/Petitioner Crystal Collins' *pro se* motion to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255. [Record No. 42] The United States filed its response to the motion on January 20, 2011 [Record No. 52], and Collins was given until February 7, 2011 to file a reply but failed to submit any additional materials by that date. Having considered the record of this proceeding, the Court will deny Collins' motion.

**I.     Relevant Facts**

On September 11, 2008, a federal grand jury sitting in Covington, Kentucky, indicted Petitioner Collins on two counts. [Record No. 1] The first count charged Collins with use of an unauthorized access device in violation of 18 U.S.C. §1029(a)(2). In count two, Collins was charged with aggravated identity theft in violation of 18 U.S.C. §1028A.[1] The charges related

---

[1] While the defendant's criminal case was pending, the Supreme Court decided *Flores-Figueroa v. United States*, 129 S.Ct. 1886 (2009). This holding is discussed more fully below.

to Collins' use of a driver's license that contained the name and personal identifying information of a real person but Collins' photograph. The fake license was used to open a charge account. The charge account and license were subsequently used to purchase merchandise in the name of the real person identified in the indictment as "S.K."

Collins initially appeared before United States Magistrate Judge J. Gregory Wehrman on September 17, 2008, and entered a plea of not guilty to both charges. [Record No. 7] Although counsel was initially appointed for Collins, she subsequently retained Dennis C. Alerding as her attorney. [Record Nos. 7, 12] Prior to trial, Collins moved the Court to be re-arraigned for the purpose of entering a guilty plea to both counts. [Record No. 13]

Collins was re-arraigned on November 10, 2008. [Record No. 15] After the Court confirmed that Collins was competent to enter a guilty plea, both the Assistant United States Attorney ("AUSA") and the Court reviewed the penalties associated with count one (not more than ten years imprisonment; a fine of not more than $250,000; a term of supervised release of not more than three years; and a special assessment of $100) and count two (at least two years imprisonment, consecutive to the sentence imposed under count one; a fine of not more than $250,000; a term of supervised release of not more than one year; and a special assessment of $100). [Record No. 50; 11/10/08 Transcript, pp. 9, 13] The AUSA and the Court also confirmed that no additional promises were made to Collins to persuade her to enter into the Plea Agreement with the United States. [Record No. 50; 11/10/08 Transcript, pp. 10, 11]

After reviewing both counts, Collins was asked to explain in her own words what she had done to be guilty of the crimes charged. She responded as follows:

> THE DEFENDANT: I was given a fake driver's license to go to a Meijer's store to get a credit card to get merchandise.
>
> THE COURT: All right. And then did you get the credit card by the use of that fake drivers license?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And what did you then do with the Meijer's card that you obtained?
>
> THE DEFENDANT: I purchased merchandise that day at the store, sir.
>
> THE COURT: All right. The plea agreement indicates that the amount of purchases was approximately $1,500.
>
> THE DEFENDANT: That is correct, sir.

[*Id.*, pp. 23-24]

Collins then confirmed that the accuracy of the factual statement contained in paragraph three of her Plea Agreement with the United States. [*Id.*, p. 25] This paragraph provides:

> 3. As to Counts 1 and 2, the United States could prove the following facts that establish the essential elements of the offense beyond a reasonable doubt, and the Defendant admits these facts:
>
> On or about December 27, 2007, Crystal A. Collins used a counterfeit driver's license that bore the name and real personal identifying information of a person identified herein as "S.K." but Collins photo to open a credit account at Meijer's in Cold Springs, Kentucky. That same day, Collins used the counterfeit driver's license and the fraudulent credit account she had opened in S.K.'s name to purchase approximately $1,500 in goods at the store. Collins knew that S.K. was a real person and that the driver's license that was used to make the counterfeit license was an actual driver's license.

[Record No. 27; Plea Agreement with Sealed Supplement] Thus, in the last sentence of this paragraph, Collins confirmed that she knew *at the time of her criminal actions* that she had used a driver's license belonging to a real person to open a fraudulent account at Meijer's. While the

license contained the personal identifying information of "S.K.," it bore her picture. And as she indicated at the conclusion of the re-arraignment hearing, Collins wished to enter a plea of guilty to counts one and two because she was, in fact, guilty of those charges. [Record No. 50; Transcript, p. 25]

*Flores-Figueroa v. United States*, 129 S.Ct. 1886 (2009), was decided by the Supreme Court on May 4, 2009. Collins' sentencing hearing was held approximately five months later (October 13, 2009). [Record No. 28] Collins did not object to any of the factual information contained in her Presentence Investigation Report ("PSR"). [Record No. 26] In relevant part, the Offense Conduct section of the PSR provided that:

> 5. On December 28, 2007, Sgt. Messer with the Cold Springs, Kentucky, Police Department received a telephone call from Officer Bauwens of the St. Charles, Illinois, Police Department in reference to a possible identity theft which had just occurred at the Meijer Department Store in Cold Springs, Kentucky. It was determined that an unknown female (later identified as Crystal Collins) had opened a credit card account through Meijer Department Store in the name of [S.K.]. Upon being approved for the credit, Ms. Collins purchased $1,500 worth of merchandise and left the store, ultimately forgetting one item in her cart, a Playstation III.
>
> 6. Personnel with the Meijer Department Store attempted to contact [S.K.] to inform her of the merchandise which she had left behind. [S.K.] informed Meijer personnel that she had not been in their store that night and that she lived in Illinois. After conversing with Meijer personnel, [S.K.] contacted Officer Bauwens with the St. Charles, Illinois, Police Department to report the offense. Officer Bauwens, in turn, contacted personnel with the Cold Springs, Police Department and indicated the suspect (Collins) that had used the name of [S.K.] called their store on December 29, 2007 and inquired about the Playstation III.
>
> 7. On December 30, 2007, Collins returned to Meijer Department Store to retrieve the Playstation III and was arrested by personnel with the Alexandria, Kentucky, Police Department. She was arrested by the

neighboring police department as personnel with the Cold Springs, Kentucky, Police Department were busy on another arrest.

8. Officer Vinson with the Alexandria, Kentucky, Police Department initially interviewed Collins. She admitted to using a counterfeit identification to get a credit card with Meijer and admitted to spending $1,500 on December 28, 2008 [sic]. Collins advised the officer that some of the items were still in the van she had been driving, which was parked in the store parking lot. Collins gave the officers consent to search the van. In the van, officers discovered six counterfeit state identifications; two counterfeit social security cards; three Sam Club cards bearing her photo with different names; and one counterfeit work identification. Officers also discovered $1,402 in cash. Collins indicated that the monies were obtained from a male subject for stolen items that she delivered to him in Chicago. In addition, officers discovered two 4GB iPod Nanos and a pair of earrings that Collins stated were purchased at Meijer Department Store with the fraudulent credit card. Furthermore, a marijuana blunt was found in the ashtray of the van. All of these items were recovered by officers of the Alexandria, Kentucky, Police Department.

9. The following counterfeit state identifications and social security cards were discovered in Collins' possession bearing her photo:

   A.) An Illinois Driver's License in the name of [S.K.];
   B.) An Illinois Driver's License in the name of [T.M.C.];
   C.) An Illinois Driver's License in the name of [E.A.F.];
   D.) A Missouri Driver's License in the name of [S.K.];
   E.) A Florida Driver's License in the name of [B.J.];
   F.) An Iowa Driver's License in the name of [I.W.T.];
   G.) A Social Security Card in the name of [T.M.C.];
   H.) A Social Security Card in the name of [B.J.].

10. The following items were recovered by Alexandria Police Officers from the possession of Collins:

    A.) A counterfeit work identification for Conseco Company in the name of [B.W.];
    B.) Three Sam Club cards bearing Collins' photo an done of the following names: [S.K., E.F., or B.J.]
    C.) Two 4GB iPod Nanos, priced at $299.98 total; and,
    D.) A pair of earrings priced at $4.00.

11. Collins was transported to the Alexandria, Kentucky, Police Department and was interviewed by Sgt. Messer of the Cold Spring, Kentucky, Police Department. She again admitted to using a counterfeit identification to obtain a credit card with Meijer Department Store. Collins also stated that the $1,402 in cash was given to her by a man named Steve for the goods that she had already bought for him and delivered to Chicago. She further stated that Steve is the ring leader and he supplies the identifications and the information on the victims.

The fact that Collins had multiple forms of identification bearing the same names [*i.e.*, two driver's license and a Sam Club card in the name of S.K., a driver's license and social security card in the name of T.M.C; and a driver's license, Sam Club card and social security card in the name of B.J.] is some evidence that she knew or should have known that the individuals were real people. However, Collins' statements that the person identified as Steve "supplies the identifications *and the information on the victims*" (emphasis added) is stronger proof that she was aware that she was being supplied information from real persons which was used in the manufacture of the counterfeit cards.

Prior to the sentencing hearing which was held on October 13, 2009, Collins reviewed her PSR and discussed its contents with her attorney. [Record No. 51; 10/13/09 Transcript, p. 2] Collins did not object to any of the information contained in the PSR. [*Id.*, p. 3] Additionally, when addressing the Court, Collins again admitted that she was guilty of the two counts of conviction. [*Id.*, p. 11]

In accordance with the relevant statutory provisions, Collins was sentenced to a term of imprisonment of five months on count one and a term of imprisonment of 24 months on count two, to be served consecutive to count one, for a total term of imprisonment of 29 months. [*Id.*, pp. 16-22] Although Collins attempted to cooperate with the United States, she did not receive

the benefit of a motion under United States Sentencing Guideline ("USSG") §5K1.1.[2] The Court initially allowed Collins to self-report to the institution designated by the Bureau of Prisons. However, Collins violated her conditions of release within two weeks of being sentenced. As a result, she was arrested on October 26, 2009, and her bond revoked the following day. [Record Nos. 29-32]

On March 30, 2010, Collins wrote to the Court asking for assistance regarding her conviction for aggravated identity theft. For the first time, Collins asserted that she did not know that "S.K." was a real person at the time she committed to offense. [Record No. 37] Collins admits that her action was prompted by three individuals incarcerated at Alderson Federal Prison Camp who were released following the Supreme Court's decision in *Flores-Figueroa*. Collins second letter to the Court is dated June 4, 2010. [Record No. 39] Through this letter, Collins asks about application of the safety valve to her case and questions whether she would be eligible for a reduction of her sentence under Rule 35 of the Federal Rules of Criminal Procedure. She also outlines her efforts at cooperating in the investigation regarding the person responsible for making the false identification that she used to defraud Meijer's.

**II.     Standard of Review**

Under 28 U.S.C. § 2255, a federal prisoner such as Collins may seek habeas relief on the grounds that her sentence violates the Constitution or federal law, the federal court lacked jurisdiction to impose the sentence, or the sentence exceeds the maximum authorized by law. *See* 28 U.S.C. § 2255. To prevail on a motion under this statutory section of the United States

---

[2] The sealed supplement to the defendant's Plea Agreement makes no reference to 18 U.S.C. §3553(e) which limits the Court's ability to impose a sentence below a statutory minimum.

Code, a movant must establish that the error had a "substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999); *Schledwitz v. United States*, 169 F.3d 1001, 1011 (6th Cir. 1999). Further, to prevail on a motion alleging a non-constitutional error, the movant must establish a "fundamental defect which inherently results in a complete miscarriage of justice or an error so egregious that it amounts to a violation of due process." *Watson*, 165 F.3d at 488 (citing *Hill v. United States*, 368 U.S. 424, 428 (1962)).

In seeking relief under § 2255, the movant bears the burden of proving her contentions by a preponderance of the evidence. *See McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (per curiam) ("Defendants seeking to set aside their sentences pursuant to 28 U.S.C. § 2255 have the burden of sustaining their contentions by a preponderance of the evidence."). And with respect to factual contentions, the reviewing court shall hold an evidentiary hearing unless "the files and records of the case conclusively show that the prisoner is entitled to no relief." *See* 28 U.S.C. § 2255(b). However, "[n]o hearing is required if the petitioner's allegations 'cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (quoting *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995)). The Court also notes that *pro se* motions receive a comparatively lenient construction. *See Castro v. United States*, 540 U.S. 375 (2003); *Franklin v. Rose*, 765 F.2d 82, 84–85 (6th Cir. 1985).

**III.    Legal Analysis**

Title 18 of the United States Code, section 1028A(a)(1), imposes a two-year consecutive term of imprisonment for a person who, during or in relation to the commission of other crimes, "knowingly . . . uses, without lawful authority, a means of identification of another person." In *Flores-Figueroa*, the Supreme Court addressed the question of whether the United States must prove that the defendant knew that the identifying information on the document in issue belonged to a real person to sustain a conviction for aggravated identity theft under 18 U.S.C. §1028A(a)(1). 129 S. Ct. 1886 (2009). Concluding that such proof was required under the plain language of the statute, the Court reversed the defendant's conviction because knowledge was not proven at trial. *Id.* at 1894.

In the present case, Collins seeks relief from her sentence on two grounds. First, she challenges the accuracy of the last sentence of paragraph three of her Plea Agreement which provides that, on December 27, 2007, she "knew that S.K. was a real person and that the driver's license that was used to make the counterfeit license was an actual driver's license." She now contends that she did not know *at the time of the offense* that S.K. was a real person and was "duped" into signing the Plea Agreement based on promises that she would receive a motion for a downward departure from the mandatory 24 month term of incarceration (count two) if she assisted the United States in the prosecution of the person who provided the fake driver's license to her. According to Collins' current assertions, immediately after being detained for the offense, she advised law enforcement that she did not know that the license contained information taken from a real person. She also asserts that she later advised her attorney and the AUSA of her lack of knowledge. As a second, related ground for relief, Collins argues that,

while she may have known at the time of her guilty plea that S.K. was a real person, she did not know "at the time of the offense" that S.K. was a real person. In other words, she now seeks to make ambiguous what was at the time of her guilty plea clear and unambiguous.

In response, the United States argues that the Court lacks jurisdiction over Collins' motion because she voluntarily and knowingly entered a guilty plea and waived her right to collaterally attack her guilty plea, conviction and any sentence that did not exceed the guideline recommendation.[3] Further, the government contends that Collins is unable to establish actual innocence as required by *Bousley v. United States*, 523 U.S. 614 (1998). Thus, the United States asserts that Collins' claim is procedurally defaulted.

### A. Waiver

Collins does not seek to attack the validity of her waiver. Instead, she claims that the United States failed to comply with the parties' agreement. Where, as here, § 2255 motions do not set out a basis for challenging the validity of a waiver or a plea, the Sixth Circuit has upheld such waivers from collateral attack if it is demonstrated that the waiver was knowing and voluntary. *See, e.g., Short v. United States*, 471 F.3d 686, 697-98 (6th Cir. 2006) (finding a movant's arguments, other than ineffective assistance of counsel and jurisdictional arguments, to be waived by the terms of the plea agreement); *United States v. Calderon*, 388 F.3d 197, 199 (6th Cir. 2004); *Davila v. United States*, 258 F.3d 448, 451 (6th Cir. 2001) (holding that a defendant waived his right to bring a § 2255 petition based on ineffective assistance of counsel not relating to the plea agreement). Thus, as a general matter, only challenges to the validity of

---

[3] Here, there is no dispute that Collins' twenty-nine month sentence of incarceration did not exceed her recommended guideline range.

the plea agreement cannot be waived. *See e.g., In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007) ("[A] defendant's informed and voluntary waiver of the right to collaterally attack a conviction and sentence is enforceable."); *id.* (". . . [I]t would be entirely circular for the government to argue that the defendant has waived his right to an appeal or a collateral attack when the substance of his claim challenges the very validity of the waiver itself.") (citing *Watson*, 165 F.3d at 489 ); *Watson*, 165 F.3d at 489 ("'While we do not hold that [a defendant's] waiver categorically forecloses him from bringing any section 2255 proceeding, such as a claim of ineffective assistance of counsel or involuntariness of waiver, the question of the degree of his culpability is an issue clearly contemplated by, and subject to, his plea agreement.'") (quoting *United States v. Abarca*, 985 F.2d 1012, 1014 (9th Cir. 1993)).

As noted above, Collins does not challenge the validity of the plea agreement or the waiver provision contained within it. Instead, she contends that the government did not follow through with its promises. More specifically, she states that the United States did not file a motion for a departure from the mandatory 24-month term of imprisonment for aggravated identity theft because the information she provided regarding the person supplying the false identification to her was insufficient to the government. In other words, Collins claims that she provided all the information she had, but it was not enough to satisfy the United States. Such a claim falls short of establishing that the United States breached its agreement, giving rise to non-enforcement of the waiver provision.[4]

---

[4] At page 7 of her pending motion, Collins claims that she "initially accepted the plea agreement *in hopes* of receiving a downward departure." Although she later claims that she was "duped" when the United States later failed to file such a motion, such assertion constitutes a legal assertion which is not factually-based. Simply put, Collins' hope cannot be transformed into a legally-binding

As outlined above, at the time of Collins' re-arraignment, she acknowledged that no promises, other than those contained in the plea agreement, had been made to induce or persuade her to enter a guilty plea. [Record No. 50; Transcript, pp. 12] The terms of the plea agreement did not guarantee that the United States would move for a downward departure from the defendant's guideline range or seek relief from the mandatory, consecutive term to be imposed for the aggravated identity theft conviction. Instead, the relevant portion of the parties' agreement provided that the United States would file a motion for a downward departure under USSG §5K1.1 if, in the sole discretion of the United States, Collins provided substantial assistance in the investigation or prosecutions of others. [*See* Record No. 27; Plea Agreement with Sealed Supplement] There is no indication that the United States declined to move for reduction of Collins' sentence for an improper motive. And while Collins may truly believe that she provided all information available to her regarding others who were involved in the matter, that belief – even if true – may not be sufficient to warrant a motion for a reduced sentence by the United States. Providing all information *available* to a defendant does not necessarily constitute *substantial* assistance under USSG § 5K1.1. As an initial matter, that determination rests with the prosecution. *See Wade v. United States*, 504 U.S. 181, 185 (1992) (observing that the Government has a "power, not a duty, to file a [substantial-assistance] motion"); *United States v. Truman*, 304 F.3d 586, 591 (6th Cir. 2002) (recognizing the government's "exclusive gate-keeping authority over the triggering mechanism of § 5K1.1" and its "power to limit the court's exercise of discretion to depart downward based on substantial assistance.").

---

requirement where, as here, the Plea Agreement clearly establishes that the United States has discretion to determine whether to file such a motion.

Collins was fully-aware of the substance of her Plea Agreement at the time she signed it. Further, during the re-arraignment hearing which was conducted in accordance with Rule 11 of the Federal Rules of Criminal Procedure, the Court confirmed that her guilty plea was knowing, intelligent, and voluntary. The plea colloquy established that Collins was fully-aware of the consequences of the waiver provision contained in the Plea Agreement. In relevant part, Collins provided the following responses when questioned under oath on November 10, 2008:

> THE COURT: There is some waiver language that is contained in your plea agreement. It's not unusual to have this language in a plea agreement, but anytime it's present, I do need to review it with you. And in your case, it's in paragraph seven, which provided that you waive the right to appeal and the right to attack collaterally the guilty plea, conviction, and sentence, including any order of restitution. However, the waiver of the right to appeal the sentence or to collaterally attack the sentence would not apply if you were to receive a prison sentence greater than the high end of the guideline range as finally determined by the Court, and that you also waive the right to appeal any order of restitution.
>
> Do you understand that you're waiving or giving up those rights?
>
> THE DEFENDANT: Yes, sir, I do.
>
> THE COURT: And do you understand that by giving up the right to collaterally attack something[,] that means that you're giving up the right to file a separate lawsuit to challenge it?
>
> THE DEFENDANT: Yes.
>
> ** ** ** **
>
> THE COURT: And if the sentence that's imposed in the case would be more severe than you expect, while you may have a right to appeal the sentence, you wouldn't have the right to withdraw from the plea agreement for that reason.
>
> THE DEFENDANT: I understand.
>
> THE COURT: You understand that?

THE DEFENDANT: Uh-huh.

[Record No. 50; 11/10/08 Transcript, pp. 18-20]

In summary, Collins was fully competent and capable of entering an informed guilty plea. Her plea was knowing and voluntary and subject to the terms of the Plea Agreement. Further, Collins was not sentenced above her guideline range. Therefore, the waiver provision contained in the Plea Agreement is enforceable. *United States v. Socolovitch*, 340 F. App'x 291, 296 (6th Cir. 2009) (courts interpret plea agreements under principles of contract law) (citing *United States v. Lukse*, 286 F.3d 906, 909 (6th Cir. 2002)); *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986). Here, Collins bargained for certain concessions and received the benefit of her bargain. And waiver of a collateral attack was part of the bargain that the United States received. *See United States v. Bradley*, 400 F.3d 459, 463 (6th Cir. 2005) (noting the enforceability of such provisions to future changes in existing law).[5]

### B.    Procedural Default/Actual Innocence

As the United States notes in its response to Collins' motion, when a defendant pleads guilty and does not challenge the validity of her guilty plea on appeal, the claim is procedurally defaulted. Procedural default reflects the general rule that a § 2255 motion may not substitute for a direct appeal. *See Sunal v. Large*, 332 U.S. 174 (1947); *Peveler v. United States*, 269 F.3d

---

[5] Neither *United States v. Gaspar*, 344 F. App'x 541, 546-47 (11th Cir. 2009), nor *United States v. De LaRosa*, 346 F. App'x 468, 471 (11th Cir. 2009), alter this analysis. Both out-of-circuit cases involved whether evidence presented during trial was sufficient to sustain a conviction for aggravated identity theft. Here, the defendant entered a plea pursuant to a Plea Agreement and admitted guilt. As a result of the defendant's admissions, this case did not proceed to trial and the United States was not required to submit proof to convince a jury of this element of the offense beyond a reasonable doubt.

693, 698-703 (6th Cir. 2001) (analyzing procedural default). Therefore, to assert a claim not raised on direct review, a defendant ordinarily must show cause for the default and prejudice, or establish actual innocence. *Bousley v. United States*, 523 U.S. 614 (1998); *United States v. Frady*, 456 U.S. 152 (1982); *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003).

Collins was given notice of the default issue in the United States' response to her § 2255 motion. Her awareness of the issue is also reflected in her § 2255 motion. However, she asserts a claim of actual innocence as a basis for excusing the default. According to the Supreme Court, "[a] claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrera v. Collins*, 506 U.S. 390, 404 (1993). However, the actual innocence exception requires factual innocence, "not merely legal insufficiency." *See Bousley*, 523 U.S. 623. Under this actual innocence standard, Collins' claim fails based on her sworn admissions during the Rule 11 colloquy, the terms of the parties' Plea Agreement, and the absence of convincing, countervailing proof.

In *Flores-Figueroa*, the Supreme Court held that §1028A(a)(1) requires that the government "show that the defendant knew that the means of identification at issue belonged to another person." *See Flores-Figueroa*, 129 S.Ct. at 1894. Collins contends that she is "actually innocent" because, as of the time of the offense (as opposed to as of the time the guilty plea was entered), the United States did not offer proof of such knowledge on her part. However, by entering into the Plea Agreement, Collins admitted that the government could prove the following facts beyond a reasonable doubt:

> On or about December 27, 2007, Crystal A. Collins used a counterfeit driver's license that bore the name and real personal identifying information of a person identified herein as "S.K." but Collins photo to open a credit account at Meijer's in Cold Springs, Kentucky. That same day, Collins used the counterfeit driver's license and the fraudulent credit account she had opened in S.K.'s name to purchase approximately $1,500 in goods at the store. Collins knew that S.K. was a real person and that the driver's license that was used to make the counterfeit license was an actual driver's license.

[Record No. 27; Plea Agreement with Sealed Supplement, p. 2.]

The indictment returned in this matter charged that Collins knowingly used, without lawful authority, a means of identification of another person. Likewise, the Plea Agreement subsequently negotiated by the parties contained the requisite element that Collins knew that the identification document she used unlawfully belonged to another person. During the plea colloquy, Collins testified under oath that the information contained in the Plea Agreement – specifically, the factual statement contained in paragraph 3 of the document – was true and correct. [Record No. 50; 11/10/08 Transcript, p. 25] Additionally, Collins was correctly advised of the elements of the offense charging aggravated identity theft.

Collins' sworn testimony presented during the Rule 11 colloquy carries substantial weight. As the Fourth Circuit has explained,

> an appropriately conducted Rule 11 colloquy can only serve meaningfully if the court is entitled to rely on the defendant's statements made under oath to accept a guilty plea . . . To view the Rule 11 colloquy as a procedural game in which pieces are moved and manipulated to achieve a result that can beat the system established for providing due process to the defendant undermines that very process.

*United States v. Bowman*, 348 F.3d 408, 417 (4th Cir. 2003) (citations omitted); *see Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986) (observing, as to "fully adequate" Rule 11

procedures, that "[t]o allow defendant to attempt to prove by affidavit that the agreement is otherwise than it appears, unambiguously, on a thorough record would violate established contract-law principles").

The United States presented proof that, as of December 27, 2007, Collins "knew that [the victim of the offense] was a real person and that the driver's license that was used to make the counterfeit license was an actual driver's license." [Record No. 27, Plea Agreement and Sealed Supplement, p. 2] Because Collins bears the burden of proof to establish actual innocence, she cannot demonstrate that, "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted [her]." *See Bousley*, 523 U.S. at 623 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (internal citations omitted)). Collins cannot meet this burden by now claiming that she "was not *fully aware* of what [she] was committed to" when she entered her guilty plea. [See Record No. 42, p. 7] Instead, her knowing and voluntary plea of guilty is a valid admission to all elements of the crimes charged. *McCarthy v. United States*, 394 U.S. 459, 466 (1969). Collins' claim of actual innocence, therefore, fails.

### IV. Certificate of Appealability

A Certificate of Appealability may issue where a petitioner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires a movant to demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see Miller-El v. Cockrell*, 537 U.S. 322, 337-38 (2003) (discussing the development of the standard). The reviewing court must indicate which specific issues satisfy the "substantial showing"

requirement. 28 U.S.C. § 2253(c)(3); *see Bradley v. Birkett*, 156 F. App'x 771, 774 (6th Cir. 2005) (noting the requirement of individualized assessment of claims) (citing *Porterfield v. Bell*, 258 F.3d 484, 487 (6th Cir. 2001)). Before issuing a Certificate of Appealability following dismissals on procedural grounds, the petitioner must establish that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *See Slack*, 529 U.S. at 484.

No Certificate of Appealability will be issued in this matter. Having reviewed the record of this proceeding and having considered the parties' respective arguments, the Court concludes that jurists of reason would not debate the procedural rulings outlined above. Collins acknowledges that no direct appeal was filed in this matter. Further, she has failed to establish actual innocence as an exception to procedural default. Based on Collins' sworn admissions during the Rule 11 colloquy and plea agreement, she simply cannot make the showing that is required under the applicable standard. Finally, she cannot overcome the valid and enforceable waiver provision contained in the Plea Agreement.

**V.      Section 1983 Claim for Monetary Damages**

Liberally construed, Collins' motion also appears to include a claim for monetary damages under 42 U.S.C. § 1983. However, this claim is unavailable under these circumstances. A conviction cannot be collaterally challenged by a civil rights claim for damages unless the defendant/claimant first establishes that the conviction was constitutionally infirm under 28 U.S.C. § 2255. *See Dunn v. Smith*, No. 94-1920, 1995 U.S. App. LEXIS 8678 (6th Cir. Apr. 12,

1995) ("Dunn may not challenge his conviction collaterally in a civil rights action for damages, but must first establish that his constitutional rights were violated in a motion to vacate under 28 U.S.C. § 2255.") (citing *Beverly v. Reno*, 23 F.3d 158, 158-59 (7th Cir. 1994); *Hadley v. Werner*, 753 F.2d 514, 516 (6th Cir. 1985)). Because Collins has not succeeded on her § 2255 motion, her § 1983 claim necessarily fails as well.

VI. **Conclusion**

Based on the foregoing analysis, it is hereby

**ORDERED** that Defendant/Petitioner Crystal Collins' motion to vacate, alter, or set aside her guilty plea, conviction and/or sentence [Record No. 42] is **DENIED**. A Certificate of Appealability shall not issue as to any issue raised by Collins. Further, Collins' claim for monetary damages is **DISMISSED** with prejudice.

This 8th day of February, 2011.

Signed By:
*Danny C. Reeves* DCR
United States District Judge